AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
DEC 10 2019
AT ___O'CLOCK___
John M. Domurad, Clerk - Syracuse

In the Matter of the Search of                )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*    )   Case No. 5:19-mj-834 (TWD)
a) iPhone smartphone, color white, clear case; b) LG   )
smartphone, color black, model LM-Q720PS, IMEI:  )
356095105840359; c) ZTE smartphone, color black, Model )
Z3153 V, IMEI: 869942040195995                        )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
a) iPhone smartphone, color white, clear case; b) LG smartphone, color black, model LM-Q720PS, IMEI: 356095105840359; c) ZTE smartphone, color black, Model Z3153 V, IMEI: 869942040195995, as more fully described in Attachment A

located in the ___Northern___ District of ___New York___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Distribution and possession with the intent to distribute a controlled substance |
| 18 USC 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |
| 18 USC 922(g) | Felon in possession of a firearm |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kelly Baart, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec 10, 2019

*Judge's signature*

City and state: Syracuse, New York

Hon. Thérèse Wiley Dancks, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT "A"

Description of Property to be Searched

a. iPhone smartphone, color white, clear case [seized from the person of JORDAN MELENDEZ]
b. LG smartphone, color black, model LM-Q720PS, IMEI: 356095105840359 [seized from the person of JORDAN MELENDEZ]
c. ZTE smartphone, color black, Model Z3153 V, IMEI: 869942040195995 [seized from the cup holder of the front passenger door of the vehicle in which JORDAN MELENDEZ was a passenger]

These DEVICES are currently located in the custody of DEA Evidence in Syracuse, NY.

This warrant authorizes the forensic examination of the DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT "B"**

1. All records on the DEVICES described in Attachment A that relate to violations of Title 21, United States Code, Section 841, and Title 18, United States Codes, Sections 924(c) and 922(g), including:

   a. Any subscriber or contact information to include names, addresses, telephone numbers, email addresses, or other identifiers, as well as location information for the DEVICES;

   b. Log information of phone numbers or email addresses of missed calls, incoming and outgoing calls, messages, and/or other communications, and any information associated with those phone numbers or email addresses;

   c. Other caller-identification information, including names, phone numbers, and addresses;

   d. Address books or contact lists;

   e. Opened and unopened voice mail messages;

   f. Any SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), email messages, chats, installed applications used to transmit any such messages or communications, and any other messages or communications, and any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the Subject Devices;

   g. Text, photograph, audio, or video files stored on the DEVICES;

   h. Documents, spreadsheets, calendar, note, password, dictionary, database, or other scheduling information;

   i. Any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and location entries to include Cell Tower and WiFi entries;

   j. Any locations, destinations, or addresses logged or otherwise stored on the DEVICES;

   k. Any internet or browser entries or history; and

   l. Any system data or configuration information contained within the DEVICES.

2. Evidence of user attribution showing who used or owned the DEVICES at the time the tings described in this warrant were created, edited or deleted, such as logs, phonebooks, save usernames and passwords, documents and browsing history (to include internet activity, firewall logs, cashes, browser history and cookies, "bookmarked" or "favorite" web pages, search term that the user entered into any Internet search engine, and records of user-type web addresses.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>a. iPhone smartphone, color white, clear case [seized from the person of JORDAN MELENDEZ]<br>b. LG smartphone, color black, model LM-Q720PS, IMEI: 356095105840359 [seized from the person of JORDAN MELENDEZ]<br>c. ZTE smartphone, color black, Model Z3153 V, IMEI: 869942040195995 [seized from the cup holder of the front passenger door of the vehicle in which JORDAN MELENDEZ was a passenger]<br><br>CURRENTLY LOCATED IN DEA EVIDENCE | Case No. |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Kelly Baart, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Police Officer with the Syracuse Police Department, where I have been employed since July 18, 2004. I am currently assigned to the United States Department of Justice, Drug Enforcement Administration (DEA) Syracuse Resident Office as a Task Force Officer. I have been a sworn member of the DEA Syracuse Resident Office Task Force since January 2019. As such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, *et sec.*, and Title 18, United States Code, Section 2516.

2. I have participated in several multi-agency narcotics investigations. During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and reviews of tape-recorded conversations and narcotics records. I have participated in numerous searches of residences, businesses, and vehicles in which controlled substances, drug paraphernalia, currency and records were discovered. My experience, as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below. As a result of my review of reports made by federal, state, and local law enforcement agencies, I am fully familiar with the facts and circumstances of this investigation.

4. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B, through protocols more fully described in Attachment C.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The devices to be searched are:

   a. iPhone smartphone, color white, clear case [seized from the person of JORDAN MELENDEZ]
   b. LG smartphone, color black, model LM-Q720PS, IMEI: 356095105840359 [seized from the person of JORDAN MELENDEZ]

  c. ZTE smartphone, color black, Model Z3153 V, IMEI: 869942040195995 [seized from the cup holder of the front passenger door of the vehicle in which JORDAN MELENDEZ was a passenger]

The cellular telephones referenced above are hereinafter referred to as the "DEVICES." The DEVICES are currently in the custody of the DEA in Syracuse, New York.

  7. As detailed below, on or about November 14, 2019, investigators active in this investigation seized the DEVICES (listed as items a through c above) pursuant to a state court-authorized search warrant.

  8. For the reasons detailed below, I believe that there is probable cause to believe that the DEVICES contain evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances, specifically methamphetamine and fentanyl); Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime); and Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm) (the "Subject Offenses").

## PROBABLE CAUSE

  9. While conducting an ongoing investigation into methamphetamine trafficking, members of the New York State Police (NYSP), Troop C Violent Gang and Narcotics Enforcement Team (VGNET), obtained information that MELENDEZ would be traveling to the Chenango County, NY, area for the purpose of distributing methamphetamine. On the basis of this information, VGNET obtained a state court-authorized search warrant for precision location tracking information (*i.e.*, GPS information) for two of MELENDEZ's cell phones. They also obtained a state court-authorized search warrant for the person of MELENDEZ and any personal motor vehicle in which MELENDEZ was driving or was a passenger.

10. On or about November 14, 2019, members of Troop C VGNET and the NYSP Special Operations Response Team (SORT) were able to use the GPS information to locate MELENDEZ in a white 2019 Volkswagen Jetta traveling northbound on SR-12 from Reading, Pennsylvania. Members of VGNET observed the Jetta pull into a gas station in Oxford, NY. MELENDEZ, who was traveling as a passenger, and the female driver (Individual-1) exited the vehicle. At that time, members of VGNET executed the state search warrants on MELENDEZ and the vehicle. MELENDEZ was detained without incident.

11. In the course of executing the search warrants, VGNET found approximately 576 grams of methamphetamine in five separate bags in the trunk of the Jetta, along with a digital scale, heat sealing bags, and a heat sealer. The methamphetamine subsequently field tested positive for the presence of methamphetamine. The NYSP also found approximately 47 grams of fentanyl contained in a plastic bag on the front seat floor board area. The fentanyl subsequently field tested positive for the presence of fentanyl. The NYSP also found a loaded .40 caliber Glock semi-automatic pistol next to the bag of fentanyl on the front seat floor board area. In addition, approximately $1,755 in cash was recovered from the vehicle and from MELENDEZ's person.

12. In the course of executing the search warrants, VGNET also found the DEVICES. The ZTE smartphone was seized from the cup holder of the front passenger door of the Jetta. The iPhone and LG smartphone were both seized from MELENDEZ's person.

13. During the search of the vehicle, MELENDEZ and Individual-1 were detained. MELENDEZ made the following spontaneous utterances, among others, in front of law enforcement agents:

- "Everything in the car is mine."

- "Look, I just gave [Individual-1] a hundred dollars to drive me up here, she doesn't know what's going on."
- "I told her I just need to come up here to drop some stuff off and get something for some people."
- "Did you all follow me up from Reading?"
- "My dad is going to be pissed when he finds out I took his gun without him knowing."

14. MELENDEZ was subsequently arrested and read his *Miranda* warnings and agreed to speak with investigators. Among other things, MELENDEZ advised that he would not tell investigators anything about where the drugs come from or where he was taking them. MELENDEZ stated that he knew what he was getting into when he decided to conduct this type of business. MELENDEZ stated he knew his run would eventually come to an end. When talking about prison, MELENDEZ said he knows he will have gray hair when he gets out. MELENDEZ also stated again that his dad was going to be mad when he found out that MELENDEZ took his .40 Glock pistol. When asked about Individual-1, MELENDEZ stated that she is his cousin and that he offered to pay her $100 to drive him to New York.

15. I have reviewed criminal history records pertaining to MELENDEZ, which indicate that MELENDEZ was convicted on or about July 21, 2011, in Pennsylvania state court in Reading, of burglary, in violation of 18 Pa. C.S. § 3502(a), which is a crime punishable by imprisonment for more than one year.

16. On December 10, 2019, United States Magistrate Judge for the Northern District of New York Thérèse Wiley Dancks signed a criminal complaint charging MELENDEZ, with distribution and possession with intent to distribute controlled substances, which violation involves

500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A); and 40 grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-Phenylethyl)-4-Piperidinyl] Propanamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A); and possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Section 922(g)(1).

17. Based on my training and experience and the facts set forth above, I know that:

a. Cellular telephones like the DEVICES frequently have voice mail and telephone directory features, as well as methods to learn the telephone number associated with each cellphone. Cellular telephones also typically contain records of recent call activity, both incoming and outgoing calls, and lists of stored telephone numbers and other identifying information, such as names.

b. Cellular telephones like the DEVICES typically have voice mail and/or text-messaging features, which permit the cellphone user to send and receive voice mail and/or text messages. Voice mail and text messages are typically stored on the computer network of the provider of the cellphone's telephone service, which network is external to the cellphone. Sent and received text messages may also be stored on the device.

c. Cellular telephones with camera functions, like the DEVICES, permit the cellphone user to take photographs and/or videos that are stored on the device.

d.   So-called "smartphones," such as the DEVICES, very often are linked to an email or social media account, and emails or messages sent to or from such phones often are maintained on the device until they are deleted by the user.

e.   The information described above usually remains accessible in the cellphone's memory card – or SIM card – even if the device loses battery power and/or has not been used for an extended period of time.

18.   As detailed below, based on my training and experience, I believe there is probable cause to believe that the DEVICES may have been used by MELENDEZ in connection with the Subject Offenses and that the DEVICES are likely to contain evidence of the Subject Offenses.

19.   Based on my training and experience, I know that individuals involved in narcotics trafficking often use cellular telephones to plan and coordinate their narcotics trafficking activities with other participants, drug suppliers, and customers. Such persons also commonly maintain contact information relating to their criminal associates – including names, telephone numbers, direct connect numbers, and/or addresses – in the memory of their cellular phones. Furthermore, based on my experience and training, I know that individuals who engage in narcotics trafficking activities together often use phones, like the DEVICES, to communicate with each other in order to be mobile and to evade detection by law enforcement.

20.   Accordingly, a search of the data on the DEVICES would likely reveal contact information for criminal associates, including those who provided MELENDEZ with the drugs and/or firearms described above, and would allow investigators to subpoena relevant phone records to find and identify those individuals. Moreover, the DEVICES may contain sent or received electronic messages, as well as sent or received email messages, which reflect information regarding the commission of the Subject Offenses, as well as other drug trafficking activity.

21. Based on my training and experience and the facts set forth above, I know that smartphones, like the DEVICES, can provide, *inter alia*, information regarding an individual's precise location and past travel, and directions to destinations inputted by the user. Moreover, I know that smartphones can store destinations and addresses that are inputted by the user.

22. Accordingly, a search of the data on the DEVICES would likely reveal information regarding locations frequented by MELENDEZ in connection with narcotics trafficking activities, and would allow investigators to conduct surveillance of those locations in order to identify criminal associates of MELENDEZ and the locations where narcotics, assets, and proceeds may be stored. Moreover, the DEVICES may contain the times and dates that such locations were visited, which may provide information regarding MELENDEZ's methods of transporting narcotics, and the times of such transportation.

23. Digital files or remnants of such files can be recovered months or even years after they have been created or saved on an electronic device such as the DEVICES. Even when such files have been deleted, they can often be recovered, depending on how the hard drive has subsequently been used, months or years later with forensics tools. Thus, the ability to retrieve information from the DEVICES depends less on when the information was first created or saved than on a particular user's device configuration, storage capacity, and computer habits.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the Subject Offenses, but also forensic evidence that establishes how the DEVICES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. Based upon the foregoing, I submit that there is probable cause to believe that the DEVICES contain evidence of violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances, specifically methamphetamine and fentanyl); Title 18, United States Code, Section 924(c) (possession of a

firearm in furtherance of a drug trafficking crime); and Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm); and I request that search warrants for the DEVICES be issued.

_____
Kelly Baart
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
10th day of December, 2019

_____
Hon. Thérèse Wiley Dancks
United States Magistrate Judge
Northern District of New York

## ATTACHMENT "A"

### Description of Property to be Searched

a. iPhone smartphone, color white, clear case [seized from the person of JORDAN MELENDEZ]
b. LG smartphone, color black, model LM-Q720PS, IMEI: 356095105840359 [seized from the person of JORDAN MELENDEZ]
c. ZTE smartphone, color black, Model Z3153 V, IMEI: 869942040195995 [seized from the cup holder of the front passenger door of the vehicle in which JORDAN MELENDEZ was a passenger]

These DEVICES are currently located in the custody of DEA Evidence in Syracuse, NY.

This warrant authorizes the forensic examination of the DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT "B"**

1. All records on the DEVICES described in Attachment A that relate to violations of Title 21, United States Code, Section 841, and Title 18, United States Codes, Sections 924(c) and 922(g), including:

   a. Any subscriber or contact information to include names, addresses, telephone numbers, email addresses, or other identifiers, as well as location information for the DEVICES;

   b. Log information of phone numbers or email addresses of missed calls, incoming and outgoing calls, messages, and/or other communications, and any information associated with those phone numbers or email addresses;

   c. Other caller-identification information, including names, phone numbers, and addresses;

   d. Address books or contact lists;

   e. Opened and unopened voice mail messages;

   f. Any SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), email messages, chats, installed applications used to transmit any such messages or communications, and any other messages or communications, and any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the Subject Devices;

   g. Text, photograph, audio, or video files stored on the DEVICES;

   h. Documents, spreadsheets, calendar, note, password, dictionary, database, or other scheduling information;

   i. Any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and location entries to include Cell Tower and WiFi entries;

   j. Any locations, destinations, or addresses logged or otherwise stored on the DEVICES;

   k. Any internet or browser entries or history; and

   l. Any system data or configuration information contained within the DEVICES.

2. Evidence of user attribution showing who used or owned the DEVICES at the time the tings described in this warrant were created, edited or deleted, such as logs, phonebooks, save usernames and passwords, documents and browsing history (to include internet activity, firewall logs, cashes, browser history and cookies, "bookmarked" or "favorite" web pages, search term that the user entered into any Internet search engine, and records of user-type web addresses.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.